**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**SHELLEY DAVIS**                                                            **CIVIL ACTION**

**VERSUS**                                                                        **NO. 18-1878**

**STATE OF LOUISIANA**                                                  **SECTION: "A"(5)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE.**

### Factual and Procedural History

*A.  State Court Proceedings*

Petitioner, Shelley Davis, is a convicted inmate currently incarcerated at the Plaquemines Parish Detention Center in Point a la Hache, Louisiana.    On May 16, 2013, she was indicted in Orleans Parish for second-degree murder.[1]    The Louisiana Fourth Circuit

---

[1] State Rec., Vol. 1 of 9, Grand Jury Indictment.

Court of Appeal summarized the following facts established at trial:

On December 12, 2012, Detective Jacob Lundy of the New Orleans Police Department (NOPD) received a call from dispatch concerning a homicide in the 8900 block of Olive Street. Upon arrival, he observed the victim's body on the sidewalk in front of a vacant lot on Olive Street. Multiple gunshot wounds were visible on the victim's body and several live rounds of ammunition and spent bullet casings were found in close proximity to his body.

Investigation of the crime scene led to witnesses to the shooting. The initial eyewitness identified by investigating officers was Bernard Baker. Mr. Baker was personally acquainted with both the victim and the shooter and was actually standing near the victim at the time of the shooting.

Prior to the shooting, Mr. Baker was standing with defendant and Alton Cooks in Gail Davis's yard on Olive Street. The victim approached and asked Mr. Baker to drive him to make a "run." At that point, the victim was standing on the left side of Mr. Baker, and the defendant was on his right side. The victim did not speak to the defendant or act in an aggressive manner towards her; however, the defendant pulled a gun from her purse and shot at the victim. At that moment, Mr. Baker was standing between the two. The bullet misfired, giving Mr. Baker time to run to the back yard. Mr. Baker heard several shots as he ran, but he did not look back. He heard the victim calling to him for help, but Mr. Baker was too afraid to render aid because the defendant was armed. When the shooting stopped, Mr. Baker returned to the front yard and found the victim lying face down on the ground, he observed Mr. Cooks turn the victim onto his back. The victim was unarmed at the time of the shooting.

The police secured a recorded statement from Mr. Baker and conducted a photographic lineup whereby Mr. Baker positively identified the defendant as the shooter. Det. Cochran secured a warrant of arrest for the defendant. Det. Cochran's investigation also led him to a second witness, Jada Fielder. Although Ms. Fielder did not witness the actual shooting, she heard four or five gunshots as she sat on the porch of her house. Ms. Fielder ran to the scene and saw "Iceman" on the ground. She observed the defendant running away from the area with a gun in her hand. Ms. Fielder gave a recorded statement in which she named the defendant as the shooter and made a positive identification of the defendant in a photographic line-up. At trial Ms. Fielder said she often saw the defendant in the neighborhood carrying a gun. Ms. Fielder recounted that five days prior to the shooting, she spoke to "Fresh" while he was incarcerated

in Orleans Parish. "Fresh" called her and asked her to place a three-way call to the defendant for him, which she did. The recording of that phone call was played for the jury.[2] In the call, the defendant asked Ms. Fielder to tell her what was going on with the victim in the neighborhood. Ms. Fielder said certain neighbors were angry at "Fresh" for robbing the victim. She added that she followed the defendant on Instagram and recalled that two hours after the shooting, the defendant posted a picture of herself on line with the message "Happy Wednesday." Ms. Fielder advised the defendant to erase the picture, which the defendant did. Finally, Ms. Fielder recalled speaking to the defendant after the shooting while they both were incarcerated. The defendant told Ms. Fielder to testify that she did not see the defendant shoot the victim.

Through further investigation, Det. Cochran gained access to the defendant's Instagram account. The Instagram postings were offensive rap lyrics and pictures of the defendant holding semi-automatic weaponry with clip components; all of which was displayed to the jury at trial.

At trial, Sabrina Cooks, a second eyewitness, testified she knew the victim because she dated the defendant's brother for a period of time. Ms. Cooks said the victim was known by his nickname, "Iceman," and that she knew both the victim and the defendant for a long time. At the time the victim was shot, Ms. Cooks was in front of the store on Olive Street, approximately two houses from where the victim was shot. Ms. Cooks indicated that just prior to the shooting, the defendant exited the store and spoke with her, and then the defendant walked across the street and into an alley. Shortly after that, Ms. Cooks noticed the victim walk out of the alley, followed by the defendant. According to Ms. Cooks, the victim did not speak to the defendant or show any aggression toward her prior to the shooting. The defendant simply walked up behind the victim and shot him in the leg. After the victim fell to the ground, the defendant shot him several times and then fled the area in the direction of Hollygrove Street. Ms. Cooks remained at the shooting scene to tell the police the defendant shot the victim. However, Ms. Cooks did not give the police a recorded statement.

Alton Cooks recounted that he, the victim, and Atyia Miller were together at Ms. Miller's house the night before the shooting. At that time, Mr. Cooks saw the defendant leaving a store. The defendant asked Mr. Cooks where the victim

---

[2] The jury followed along with a redacted version of the call.

was. Although the defendant did not tell Mr. Cooks why she was looking for the victim, Mr. Cooks told the victim of the defendant's inquiry. A short while later, the victim and defendant said hello to one another, and then the victim went inside Ms. Miller's house.

The following day, Mr. Cooks and the victim returned to Ms. Miller's house. That night, Mr. Cooks observed the defendant near the store and the victim and Mr. Baker standing in front of Ms. Davis's house. As Mr. Cooks walked to the back of the house, he heard gunshots. He walked back out to the front, heard more gunshots and ran to the back again. When the shooting stopped, Mr. Cooks saw the victim lying on the ground. Mr. Cooks examined the victim to determine whether he was alive.

Atyia Miller, the State's final lay witness, testified she remembered the day the victim died. She was living in the 8900 block of Olive Street. On the night before the shooting, the victim, Alton Cooks, and the defendant were at Ms. Miller's house. Mr. Cooks had been speaking to the defendant on the front porch and later went inside and told everyone the defendant had plans to kill the victim.

Dr. Cynthia Gardner, a forensic pathologist employed by the Orleans Parish Coroner's Office, performed and documented the autopsy on the victim's body. She determined the entry and exit paths of the bullets indicated that the victim was shot from the back six times. One of the bullets hit the victim's left internal iliac artery – the second largest blood vessel in the body –causing massive internal bleeding. Dr. Gardner opined that the gunshot wounds to the victim's head and iliac artery would have been rapidly fatal. She recounted that she recovered four bullets from the victim's body during the autopsy.

The defense called Det. Michael McCleary, who testified he assisted Det. Cochran in this investigation. Det. McCleary recalled that he and Det. Cochran took a recorded statement from Bernard Baker at police headquarters after the shooting. Further, Det. McCleary verified more than one person identified the defendant as the shooter during a photographic lineup. He also said Mr. Baker told him he (Mr. Baker) was standing near the victim in the front yard at the time of the shooting. Finally, Det. McCleary corrected the testimony he gave during a pretrial motion hearing concerning the victim grabbing/reaching into the defendant's purse prior to the shooting. He clarified that the victim did not reach into the defendant's purse.

The defendant elected to testify at trial. She explained that she regularly

posted "selfies" on Instagram and attached to those pictures lyrics from current gangsta rap songs. The defendant informed the jury that Eric "Fresh" Davis was her brother and that he used to sell drugs. She shared with the jury that she received a three-way call on December 6, 2012, from her brother Eric through Jada Fielder, asking whether the family was working on bonding him out of Orleans Parish Jail. The defendant testified that she knew the victim through her brother Eric and that he sold drugs.

The defendant offered the jury various reasons as to why she feared the defendant and acted in self-defense on the date of the shooting. According to the defendant, the word on the street was that Eric robbed the victim at the London Lodge motel. She also heard that she was in danger from the victim and Mr. Baker. The defendant told the jury that in November 2012, the victim drove to a house the defendant was visiting, jumped from the car, and reached for a weapon. He grabbed for her purse and attempted to rob her. The next time she saw the victim was on December 12, 2012, as she was standing in Ms. Davis's yard, talking to her friend, Mr. Cooks. Mr. Baker walked into the yard and spoke to Mr. Cooks. The defendant was scared because she knew Mr. Baker was loyal to the victim and carried a gun at all times. Afterward, the victim entered the yard, demanding his money from the defendant. When the defendant told the victim that she did not owe him any money, he reached for her purse. As she struggled with the victim over her purse, the defendant pulled a gun from the back of the purse and shot the victim. She ran because she feared Mr. Baker was running to the back of the house to get his gun. The defendant denied threatening the victim. She did not leave her house for a month after the shooting because she feared retaliation from the victim's friends. The defendant turned herself in on February 20, 2013. She also said that she did not know Ms. Miller or have anything to do with her.[3]

Following a four-day jury trial Davis was found guilty as charged on June 18, 2015.[4]

On July 30, 2015, the trial court denied her motion for new trial and imposed a sentence of

---

    [3] *State v. Davis*, 2016-KA-0078, 2016 WL 7451365 (La. App 4 Cir. 12/28/16) (footnote in original); State Rec., Vol. 8 of 9.

    [4] State Rec., Vol. 1 of 9, Minute Entries, 6/15/15 through 6/18/15.

life imprisonment without benefit of probation, parole or suspension of sentence.[5]    Her

motions to reconsider the sentence were denied.[6]

Davis appealed and raised five assignments of error:    (1) the evidence was

insufficient to support the conviction for second-degree murder; (2) the improper admission

of other-crimes evidence denied her a fair trial; (3) the trial court erred in denying the

motion for new trial; (4) the trial court erred in denying her requested jury charge; and (5)

the trial court erred in denying the defense motions in limine.    On December 28, 2016, the

Louisiana Fourth Circuit Court of Appeal affirmed the conviction and sentence.[7]    On

October 9, 2017, the Louisiana Supreme Court denied the application for writ of certiorari

filed by counsel on her behalf.[8]    Davis did not pursue post-conviction relief in the state

courts.

B.  *Federal Court Proceedings*

On or about March 10, 2018, Davis filed a federal application for habeas corpus relief.[9]

---

[5]  State Rec., Vol. 1 of 9, Minute Entry, 7/30/15.

[6]  Counsel on Davis's behalf filed a "Motion to Reconsider Sentence Motion for New Trial Arrest of Verdict."    Davis filed her own pro se motion to reconsider sentence.    State Rec., Vol. 2 of 9.    Both motions were denied.    State Rec., Vol. 3 of 9, p. 89, Judgment, 9/11/15; *see also* State Rec., Vol. 1 of 9, Minute Entry, 9/11/15.

[7]  *State v. Davis*, 16-KA-0078, 2016 WL 7451365 (La. App. 4 Cir. 12/28/16); Vol. 8 of 9.

[8]  *State v. Davis*, 2017-K-0176 (La. 10/9/17), 227 So.3d 831; State Rec., Vol. 9 of 9.

[9]  Rec. Doc. 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

In her federal petition, she asserts seven grounds for relief:    (1) judicial bias deprived her of a fair trial; (2) violation of her constitutional right to a "speedy and public trial by an impartial jury of the state or district, wherein the crime should have been previously ascertained by law, to be in form of the nature of the offense and the cause of accusation, to be confronted with the witnesses against her, to have compulsory process for obtaining witnesses in her favor [and] to have assistance of counsel for her defense"; (3) there was no murder weapon produced to support the charge of second-degree murder; (4) trial counsel was ineffective for failing to oppose zealously the State's evidence at trial; (5) the State's witnesses made statements that were inconsistent, unreliable or otherwise insufficient to support the conviction; (6) she had no prior criminal history; and (7) the conviction was based upon the introduction of inadmissible hearsay evidence.

The State argued in response that Davis failed to exhaust state-court remedies as to all of her claims; therefore, the "mixed" habeas petition containing both exhausted and unexhausted claims should be dismissed without prejudice.[10]    Davis conceded that her federal application included some unexhausted claims, which she identified as Claims 1-4.[11] She filed a document styled, "Amendment of Petition," requesting exclusion of Claims 1-4 from her federal application in order to proceed with Claims 5-7, which she alleged were

---

[10]  Rec. Doc. 13.

[11]  Rec. Doc. 14 (Answer to State's Response).

exhausted.[12]    The undersigned issued a Report and Recommendation for dismissal without prejudice because only Claim 5—if broadly construed to allege a claim of sufficiency of the evidence—had been exhausted in the state courts on direct appeal.    Thus, even her proposed amended petition was a "mixed" petition subject to dismissal without prejudice for failure to exhaust.

Davis filed an objection to the Report and Recommendation.[13]    In her objection, she agreed to withdraw the unexhausted claims identified in the report and recommendation and proceed with only the exhausted claims on federal review.    Davis identified the following four arguments for consideration:

(1) Evidence of other crimes and bad acts was improperly admitted;

(2) The State failed to disprove a theory of self-defense;

(3) The trial court erred in refusing to read a special jury charge concerning justifiable homicide; and

(4) Witnesses made statements that were inconsistent, unreliable, or otherwise insufficient to support the conviction.[14]

---

[12]  Rec. Doc. 15 (Amendment of Petition for Habeas Corpus Relief).

[13]  Because Davis's objection was initially filed in error in Davis's related but closed habeas proceedings, and only later correctly docketed in this case, the District Judge vacated the Order and Judgment adopting the Report and Recommendation and referred the matter again to the undersigned Magistrate Judge for disposition of Davis's exhausted claims.    Rec. Doc. 21.

[14]  Rec. Doc. 20, p. 5.    She sets forth the claims as the State had them set out in its response, separately identified as claims she raised on direct appeal versus claims raised in

Davis is correct that these claims were exhausted in the state courts through direct appellate review, as acknowledged by the State's response to the federal petition.[15]    Mindful of the liberal construction generally afforded *pro se* pleadings, Davis's objection will be broadly construed as a permissible amendment to her federal petition to assert not only the sufficiency claim originally raised in her federal application but also the additional properly exhausted claims not explicitly identified in the federal application.    *See Rayford v. Stephens*, 622 Fed. Appx. 315, 333 (5th Cir. 2015) (citing *United States v. Riascos*, 76 F.3d 93, 94 (5th Cir. 1996) (The district court may construe an issue raised for the first time in an objection to a magistrate judge's report and recommendation as a motion to amend)).    The matter was referred to the undersigned for further consideration and disposition of Davis's exhausted claims.[16]

## Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts

---

her federal application (Rec. Doc. 13, p. 3).

[15]    Rec. Doc. 13, p. 3

[16]    Rec. Doc. 21.

in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that is materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the

particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Id*. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

### A.  *Sufficiency of the Evidence*

Davis contends the evidence was insufficient to support her conviction for second-degree murder because the State failed to disprove the theory that she acted in self-defense. She also argues that witnesses for the State made statements that were inconsistent,

unreliable or otherwise insufficient to support the conviction.[17]    The claim was raised and

rejected for the following reasons on direct appellate review:

> The defendant argues the evidence presented was insufficient to support her conviction of second degree murder because the State failed to rebut her evidence of self-defense. Instead she claims the killing was justifiable because it was committed under the circumstances described in La. R.S. 14:20. *See* La. R.S. 14:18(7). "A homicide is justifiable ...[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20 A(1).

> The applicable standard of review for evaluating the sufficiency of evidence in *State v. Ragas*, 98–0011, p. 13 (La. App. 4 Cir. 7/28/99), 744 So.2d 99, 106–07, *quoting State v. Egana*, 97–0318, pp. 5–6 (LA. App. 4 Cir. 12/3/97), 703 So.2d 223, 227–28 as follows:

>> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979); *State v. Green*, 588 So.2d 757 (La. App. 4 Cir. 1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. *State v. Mussall*, 523 So.2d 1305 (La. 1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. *Mussall; Green*; *supra*. "[A] reviewing court is not called upon to decide whether it believes

---

[17]    Claim 2 (the state failed to disprove a theory of self-defense) and Claim 4 (witnesses made statements that were inconsistent, unreliable, or otherwise insufficient to support the conviction) will be considered together here as a challenge to the sufficiency of the evidence.

the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Smith*, 600 So.2d 1319 (La. 1992) at 1324.

In reviewing the record for sufficiency of evidence, conflicting statements as to factual matters relate to the weight of the evidence, not its sufficiency; the determination of whether the testimony of one witness is to be believed over that of another rests with the trier of fact. *State v. Berniard*, 14–0341, p. 10 (La. App. 4 Cir. 03/04/15), 163 So.3d 71, 80; *State v. James*, 09–1188, p. 4 (La. App. 4 Cir. 02/24/10), 32 So.3d 993, 996. The testimony of a single witness, if believed by the trier of fact, is sufficient to support a factual conclusion. *State v. Wells*, 10–1338, p. 5 (La. App. 4 Cir. 03/30/11), 64 So.3d 303, 306. The trier of fact's decision as to the credibility of witnesses will not be disturbed unless it is clearly contrary to the evidence. *Id.*

All evidence, both direct and circumstantial, must meet the *Jackson* reasonable doubt standard. *Ragas*, 98–0011, p. 14, 744 So.2d at 107. "[W]here circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, 'assuming every fact to be proved that the evidence tends to prove.' " *Berniard*, 14–0341 at p. 11, 163 So. 3d at 80, *quoting State v. Draughn*, 05–1825, p. 7 (La. 01/17/07), 950 So.2d 583, 592. Ultimately, when a defendant in a homicide prosecution claims self-defense, the burden is on the State to prove beyond a reasonable doubt that the perpetrator did not act in self-defense. *State v. Hunter*, 2015–0306, p. 5 (La. App. 4 Cir. 9/9/15), 176 So.3d 530, 533, *citing State v. Taylor*, 2003–1834, p. 7 (La. 5/25/04), 875 So.2d 58, 63.

In order to prove second degree murder, the State must show the killing of a human being and that the defendant had the specific intent to kill or inflict great bodily harm upon the victim. La. R.S. 14:30.1. Specific intent "exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). "Specific intent may be inferred from the circumstances and the defendant's actions." *Berniard*, 14–0341 at p. 11, 163 So. 3d at 81, *quoting State v. Everett*, 11–0714, p. 14 (La. 6/13/12), 96 So.3d 605, 619.

In the instant case, the state lacked physical evidence connecting defendant to this crime; the State offered the trial testimony of an eyewitness. Mr. Baker testified that he was standing between the defendant and the victim when the shooting began. Mr. Baker said that neither the victim nor the defendant spoke to one another; nor did the victim attempt to grab the defendant's purse away

from her, contrary to what was placed in the police report. The victim was unarmed and in no way threatened the defendant. In fact, the defendant walked up from behind the victim and shot him once in the in the [sic] back of the head. As Mr. Baker ran, the victim fell to the ground; and the defendant stood over the victim and fired several more shots into the victim's body.

The State also presented the testimony of Ms. Fielder. Ms. Fielder testified that she did not witness the actual shooting in this case; she heard four or five gunshots as she sat on the porch of her house around the corner from the scene. Ms. Fielder ran to the scene and saw the victim on the ground. She noticed the defendant running away from the area with a gun in her hand.

The evidence at trial revealed that no gun was found on or near the victim at the time he was shot to death. Mr. Baker verified the victim was unarmed when the defendant shot him. Moreover, Ms. Fielder said she often saw the defendant in the neighborhood armed with a gun.

Dr. Cynthia Gardner performed the autopsy on the victim's body and determined that he sustained seven gunshot wounds – two to the head, three to the torso and two to the extremities, none of which was inflicted from close range. The entry and exit paths of the bullets indicated that the victim was shot from the back six times.

Although the defendant argues that she acted in self-defense, we find that Mr. Baker's testimony established that the defendant did not act in self-defense. The victim's back was toward the defendant when the shooting started. The victim neither saw, spoke to, nor interacted with the defendant in any manner prior to the time he was shot.

Based on our review of the record, we find that the State carried its burden to prove beyond a reasonable doubt the defendant had the specific intent to kill the victim; and she did not act in self-defense. Furthermore, the jury had the opportunity to determine the credibility of all testimony and evidence. A fact finder's decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. *State v. James*, 09–1188, p. 4 (La. App. 4 Cir. 02/24/10), 32 So.3d 993, 996. Thus, the evidence was sufficient to support the defendant's conviction for second degree murder; and this assignment of error is without merit.[18]

---

[18]   State Rec., Vol. 8 of 9; *State v. Davis*, 2016-KA-0078, 2016 WL 7451365, at *3-5 (La.

The Louisiana Supreme Court subsequently denied Davis's related writ application without assigning additional reasons.[19]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).    For the following reasons, the Court finds that Davis has made no such showing.

The Louisiana Fourth Circuit Court of Appeal properly analyzed the sufficiency claim under *Jackson v. Virginia*, 443 U.S. 307 (1979).    The *Jackson* standard requires a determination as to whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.    *Jackson*, 443 U.S. at 319; *Williams v. Cain*, 408 Fed. Appx. 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial.    *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that

---

App. 4 Cir. 12/28/16).

[19]   State Rec., Vol. 9 of 9, *State v. Davis*, 2017-K-0176 (La. 10/9/17), 227 So.3d 831.

a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial.").

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). Review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

"The *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis added)). Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this

Court is in fact "twice-deferential."    *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

Under Louisiana law, second-degree murder is the killing of a human being when the defendant had a specific intent to kill or to inflict great bodily harm.    La. Rev. Stat. § 14:30.1. Louisiana law provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.    La. Rev. Stat. § 14:20 (A)(1).    The State has the burden of proving that petitioner did not act in self-defense, and the standard of review on federal habeas review under *Jackson* is whether any rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the homicide was not committed in self-defense. *Trosclair v. Cain*, Civ. Action No. 12-2958, 2014 WL 4374314, at *7 (E.D. La. Sept. 2, 2014) (citing *State v. Lilly*, 552 So.2d 1036, 1039 (La. App. 1 Cir. 1989)).

The state courts reasonably rejected Davis's contention that the State failed to satisfy its burden of proving that she did not act in self-defense.    Davis testified at trial and offered her factual account in support of her claim of self-defense.    She candidly admitted she shot the victim multiple times, but the defense's theory was that she feared both the victim and Baker and only shot the victim in self-defense during a struggle over her purse, which held her gun.    She explained that she ran home after the shooting and spoke to no one because

she was scared of retaliation from the victim's friends and feared going to jail.[20]    However, state witnesses offered very different accounts that demonstrated an unprovoked and deliberate killing by Davis.    Bernard Baker testified at trial that he was standing between the victim and Davis when she pulled a gun from her purse and fired at the victim.    Baker saw her cock the gun, but the bullet "hopped out," and he ran.[21]    As he ran away, he heard gunshots and the victim yelling for help.    Baker adamantly and consistently testified on both direct and cross-examination that the victim was unarmed and did not try to snatch Davis's purse or to provoke her in any way before she shot him.[22]    Jurors were allowed to consider and weigh, as part of the defense's theory, the fact that Baker may have changed his story from an earlier version where he purportedly told Detective McCleary that the victim had tried to take Davis's purse; jurors obviously rejected it.    Baker repeatedly denied ever having said that,[23] and Detective McCleary testified that his earlier testimony at a pretrial motion hearing to that effect was simply a mistake on his part.[24]

The State also presented testimony from Sabrina Cooks who saw Davis shoot the victim.    She testified that she saw Davis shoot the victim in the leg.    When he fell, Davis

---

[20]    State Rec., Vol. 7 of 9, p. 555.

[21]    State Rec., Vol. 6 of 9, Trial Transcript, p. 369.

[22]    State Rec., Vol. 6 of 9, Trial Transcript, pp. 368-74, 382-85, 396-97.

[23]    State Rec., Vol. 6 of 9, Trial Transcript, pp. 383, 396-97.

[24]    State Rec., Vol. 7 of 9, Trial Transcript (Detective Michael McCleary), pp. 478-498.

"stood over him and shot him some more."[25]    Like Baker, she testified that the victim was unarmed and did not say or do anything to provoke Davis before the attack.[26]

The medical evidence also contradicted Davis's self-defense theory.    Dr. Gardner testified that she conducted an autopsy on the victim and analyzed the entry and exit bullet wounds.    She testified that there were a total of seven gunshot wound injuries to the victim's body, including two to the head; three to the torso and two to the extremities.[27]    Dr. Gardner's examination revealed that six of the seven shots entered from the back.[28]    None of the shots were fired at close range.

The testimony of a single, uncorroborated eyewitness, if found credible by the trier of fact, is constitutionally sufficient to support a conviction.    *United States v. King*, 703 F.2d 119, 125 (5th Cir. 1983); *accord Davis v. Cain*, Civ. Action No. 15-6652, 2016 WL 4537915, at *7 (E.D. La. May 24, 2016), *adopted*, 2016 WL 4529877 (E.D. La. Aug. 30, 2016); *Colbert v. Cain*, Civ. Action No. 14-2472, 2016 WL 4186551, at *11 (E.D. La. Apr. 12, 2016), *adopted*, 2016 WL 4161257 (E.D. La. Aug. 5, 2016); *Phillips v. Cain*, Civ. Action No. 11-2725, 2012 WL 2564926, at *13 (E.D. La. Apr. 11, 2012), *adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012). Here, as the appellate court reasonably found, the testimony of multiple witnesses and

---

[25]    State Rec., Vol. 6 of 9, Trial Transcript (Sabrina Cooks), pp. 191-94.

[26]    State Rec., Vol. 6 of 9, Trial Transcript, p. 191.

[27]    State Rec., Vol. 6 of 9, Trial Transcript (Dr. Cynthia Gardner), p. 289.

[28]    *Id.* at 290-291, 294.

objective medical evidence more than sufficed for a reasonable factfinder to conclude the

State had proven beyond a reasonable doubt that Davis did not act in self-defense.[29]

To the extent Davis suggests the jury should have credited her version of the events

that she acted in self-defense and rejected the testimony offered by the State witnesses, her

position is unavailing.    Credibility determinations are the province of the jurors, and a

federal habeas court generally will not grant relief on a sufficiency claim grounded on such

matters of credibility.    *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the

assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez*

*v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences

are to be resolved in favor of the verdict."); *McCowin v. Scott*, Civ. Action No. 93-5340, 1994

---

[29] Presumably as part of her challenge to the sufficiency of the State's evidence, Davis cites to Baker's attached self-styled "affidavit," a one-paragraph handwritten unnotarized statement dated April 12, 2017.    Rec. Doc. 3, p. 23 (Exhibit A, p. 28).    Baker's affidavit advances his opinion that Davis acted in self-defense because the victim did grab her purse. The affidavit was not presented to the state courts for consideration as part of this claim. *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (noting that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petition must overcome the limitation of § 2254(d)(1) on the record that was before that state court").    Moreover, the question under *Jackson* concerns the sufficiency of the evidence presented at trial that resulted in Davis's conviction.    Review on a sufficiency-of-the-evidence claim does not extend to evidence that was not part of the trial record.    *See Matthews v. Workman*, 577 F.3d 1175, 1185 (10th Cir. 2009) ("Put differently, it makes no sense for us, in reviewing whether a jury's verdict was based on sufficient evidence, to consider facts the jury never heard.").    Nor would an independent claim of "actual innocence" be cognizable on federal habeas review even if Davis had attempted to assert one, which she did not.    The United States Supreme Court has not recognized any free-standing actual-innocence claim to support habeas relief.    *McQuiggin v. Perkins*, 569 U.S. 383, 392, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993); *Coleman v. Thaler*, 716 F.3d 895, 908 (5th Cir. 2013).

WL 242581, at *2 (5th Cir. May 26, 1994); *Phillips v. Cain*, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), *adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012); *Picou v. Cain*, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

The record as a whole contains more than sufficient evidence introduced by the State for the jury to have concluded that the State disproved Davis's justifiable-homicide theory. When the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational.    For these reasons, Davis cannot show that the denial of the claim by the state courts was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

B.  *Other Crimes Evidence*

Davis claims that she was denied a fair trial because the trial court erroneously admitted evidence of other crimes or bad acts.    The Louisiana Fourth Circuit considered and rejected the claim on direct appeal, stating:

> In her next assignment of error, the defendant argues she was denied a fair trial because of the amount of the evidence of prior bad acts introduced at trial. Specifically, the defendant contends she was prejudiced by the introduction of the evidence of the prison beating of witness Ms. Miller; Instagram photographs of the defendant posted with a display of offensive rap music lyrics next to the photographs; the National Integrated Ballistic Information Network (NIBEN) Report and testimony which linked the gun in possession of the defendant to another crime committed in Jefferson Parish; and the prosecutor's implication during cross-examination that the defendant and her family hid the weapon used in this incident.[30]

---

[30]  The National Ballistic Information Network is an investigative tool used by law

The defendant argues that she was never charged with or convicted of any of the bad acts the State introduced evidence of, and therefore, the reason the State introduced the evidence was to portray her as a person of bad character.

La. C.E. art. 404(B)(1) states:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

The State must provide the defendant with notice and a hearing before trial if it intends to offer evidence of other crimes, wrongs, or acts. *State v. Rose*, 2006–0402, pp. 12–13 (La. 2/22/07), 949 So.2d 1236, 1243 (citing *State v. Prieur*, 277 So. 2d 126, 128 (La. 1973)). Even when the defendant's prior bad acts is relevant or otherwise admissible under La. C.E. art. 404(B), the court must balance the probative value of the evidence over its prejudicial effects before the evidence can be admitted. *Id.* at 1244.

In the present case, the State filed its notice of intent to offer other crimes evidence pursuant to La. C.E. art. 404(B) on April 8, 2015. The notice informed the defendant that the State intended to introduce the following evidence:

> [That] on or about August 16, 2013, the defendant committed a violation of La. R.S. 14:34.1 (second degree battery) on witness [Ms. Miller] while incarcerated. During the commission of the offense, defendant told [Ms. Miller] that she was committing the offense because she thought [Ms. Miller] had given information to the police about the defendant concerning the murder the defendant is presently charged with.

enforcement to determine whether a particular firearm has been used in other crimes.

> The above incident shows the defendant's motive and intent is to intimidate this witness and prevent her from testifying in the above case.

On direct examination of Ms. Miller at trial, the State elicited testimony that the defendant had beaten Ms. Miller while she and the defendant were housed in the same tent at Orleans Parish Jail. Ms. Miller identified pictures of herself taken after the beating she received at the hands of the defendant, and the jury was permitted to view them. In ruling the evidence admissible, the trial judge reminded defense counsel that at the time of the *Prieur* hearing, the defense advised her it had no objection to the information, and, in fact, wanted the evidence introduced at trial. Moreover, the defense vigorously cross-examined Ms. Miller at trial, obtaining from her the acknowledgement the defendant was not charged with any crime incident to the jail beating. In fact, on direct examination, the jury saw the defendant view the pictures of Ms. Miller and heard her deny knowing or harming Ms. Miller in any manner.

As to the Instagram photographs, the jury heard the defendant testify that she used the photographs purely for the social media craze of keeping up with her friends. As for the rap music lyrics posted with the pictures, the defendant explained that she did not pen any of the lyrics she quoted, and their meaning was not inflammatory but rather explanatory of the life styles led by some members of her age group.

With regard to the NIBEN Report, the defense was able to show that the State was never able to connect the defendant with the earlier Jefferson Parish crime in which her gun was implicated. The defendant candidly admitted that she purchased the gun from an unknown seller. Denying that she, her family, or both conspired to withhold the murder weapon from the police, the defendant said no one asked her for the weapon, so she left it in her apartment.

Finally, as to the prosecutor's references to the defendant's family making contact with the State's witnesses after their testimony, the defendant denied the allegations; and the prosecutor offered no proof in support of the allegations. In light of the extensive testimony and evidence presented to the jury, particularly the testimony of Mr. Baker, the jury's unanimous verdict of guilt was unattributable to any error in the admission of the foregoing

evidence. Accordingly, this assignment is meritless.[31]

The Louisiana Supreme Court likewise denied relief without assigning additional reasons.

To the extent Davis may be suggesting that the state court misapplied state law in admitting "other crimes" evidence at trial, that claim is not cognizable on federal habeas review.    *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).    Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.    *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).

Federal habeas courts review violations of constitutional magnitude that run afoul of due process and render the criminal proceedings fundamentally unfair.    *Lisenba v. California*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas corpus review is proper only to determine whether a state trial judge's error is so extreme as "to render the trial fundamentally unfair or violate an explicit constitutional right.").    The Due Process Clause provides a mechanism for relief when evidence is wrongly admitted in a state-court criminal proceeding, but only if that evidence is so unduly prejudicial that it renders the trial fundamentally unfair.    *Bigby v. Dretke*, 402 F.3d 551, 563 (5th Cir. 2005).    Admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief only if it "played a crucial, critical, and highly significant role in

---

[31]    *State v. Davis*, 2016 WL 7451365, at * 5-7 (footnote in original).

the trial."    *Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011) (quotation omitted).    The

evidence must have had a substantial, injurious effect or influence in determining the jury's

verdict such that it rendered the trial fundamentally unfair.    *Wood v. Quarterman*, 503 F.3d

408, 414 (5th Cir. 2007); *Hernandez v. Dretke*, 125 Fed. Appx. 528, 529 (5th Cir. 2005) (citing

*Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

Davis has not shown that the state court's decision was contrary to or involved an

unreasonable application of Supreme Court precedent.    The state courts reasonably

concluded that even if the evidence in this case was improperly admitted, the error was

harmless.    Here, considering the record as a whole, the admission of the evidence cited by

Davis (Instagram photos, NIBEN report, prison beating of Miller, and implication of

obstruction by family members) did not play a crucial, highly significant role in the trial

proceedings leading to her conviction.    *See*, *e.g.*, *Barnes v. Vannoy*, Civ. Action No. 17-1415,

2018 WL 1770816, at *19 (E.D. La. March 12, 2018), *adopted* 2018 WL 1762320 (E.D. La.

Apr. 11, 2018).    Rather, it was her unsupported self-defense story and candid admission

on the stand that she shot the victim and "kept shooting"[32]   out of unsubstantiated fear, along

with the considerable evidence introduced by the State refuting her claim of self-defense,

which resulted in the guilty verdict.    For these reasons, the claim should be denied.

C.   *Special Jury Instruction*

Davis argues that the trial court's refusal to give the special jury instruction on

---

[32]   State Rec., Vol. 7 of 9, Trial Transcript, p. 549.

justifiable homicide violated her due process rights.    The claim was considered and

rejected on direct appeal as follows:

> The defendant argues that the trial court erred in denying her requested jury charges.
>
> In *State v. Carter*, 97–2902 (La. App. 4 Cir. 5/10/00), 762 So.2d 662, this Court held:
>
>> La. C.Cr.P. art. 803 mandates that the trial court instruct the jury as to the law applicable to each case. La. C.Cr.P. art. 807 provides that the State and the defendant shall have the right before argument to submit to the court special written charges for the jury. A requested special charge "shall be given" if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent. *Id*; *State v. Craig*, 95–2499, p. 7 (La. 5/20/97), 699 So.2d 865, 869, *cert. denied, Craig v. Louisiana*, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997). Any special charge must be supported by the evidence. *Id*. However, such charge need not be given if it is included in the general charge or in another special charge. La. C.Cr.P. art. 807; *Craig*; *State v. Hawkins*, 96–0766, p. 8 (La. 1/14/97), 688 So.2d 473, 480. Jury instructions must be considered as a whole. *See State v. Thibodeaux*, 98–1673, p. 17 (La. 9/8/99), 750 So.2d 916, 929.
>
> *Id.*, 97–2902, p. 32, 762 So.2d at 683.
>
> The defendant herein was charged with and convicted of the second degree murder of Mr. Smith. The defendant requested that the jury be charged as follows:
>
>> **The possibility of voiding [sic] the necessity of taking human life by retreat:**
>>
>> In cases of justifiable homicide, the Legislature – for its own policy reasons – explicitly and categorically prohibits the jury from considering the possibility of the killer's retreat in order to determine whether the killing was "necessary" to save the killer's own life.
>
> * * *

No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry.

La. R.S. 14:20 D; *State v. Wells*, 2011–0744 (La. App. 4 Cir. 7/11/14), 156 So.3d 150.[33]

The trial court denied the defendant's requested jury charge. On the issue of **justification** for the homicide and possibility of **retreat**, the trial judge in this case charged the jury as follows:

If you find that the defendant has **raised the defense that her conduct was justified**, the state must prove that the defendant's conduct was not justified. Remember, the state bears the burden of proof of guilt beyond a reasonable doubt. A homicide is justifiable when committed for the purpose of preventing a violent or forcible felony involving danger to life or great bodily harm, by one who reasonably believes that such an offense is about to be committed and that such action is necessary to prevent the violent or forcible felony. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to their own life if attempted to prevent the felony without the killing.

**A person who is not engaged in any unlawful activity and is in a place where he or she has a right to be, has no duty to retreat before using deadly force for the purpose of preventing the commission of a violent or forcible felony involving danger to life or great bodily harm. Under such circumstance, a person may stand their ground and meet force with force. The possibility of retreat shall not be considered as a factor in determining**

---

[33] In requesting the special jury charge, the defendant cited *State v. Wells*, 2011–0744 (La. App. 4 Cir. 7/11/14), 156 So.3d 150. We note that the Louisiana Supreme Court granted a writ of certiorari in *Wells*, 2014–1701 (La. 04/17/15), 168 So.3d 389, and, subsequently, reversed this Court's decision. *See State v. Wells*, 2011–0744 (La. App. 4 Cir. 4/13/16), 191 So.3d 1127, *on remand*, 14–1701 (La. 12/8/15), –––So.3d ––––, 2015 WL 8225228, *reversing*, 11–0744 (La. App. 4 Cir. 7/11/14), 156 So.3d 150.

**whether or not the use of deadly force was reasonable and apparently necessary to prevent the commission of the violent or forcible felony.**

Thus, if you find that the defendant killed for the purpose of preventing the commission of a violent or forcible felony involving danger to life or great bodily harm and that the defendant reasonably believed that such felony was about to be committed and that the defendant reasonably believed that the killing was necessary to prevent such a felony from being committed and that the defendant reasonably believed that there would be serious danger to her own life if she attempted to prevent the felony without killing, then you must find the defendant not guilty.

[emphasis supplied].

There is little difference between the defendant's requested jury charge and the charge actually given by the trial judge; however, the message was the same—the jury could not consider the issue of the defendant's possibility of retreat in order to determine whether the killing was necessary to save her own life.    Thus, this assignment is without merit.[34]

To the extent Davis argues that the trial court violated Louisiana law when it refused to give the special jury instruction on justifiable homicide as requested, her claim is not cognizable on federal habeas review.    "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."    28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).    A federal court may not grant habeas relief based on an alleged error in the interpretation or

---

[34] State Rec., Vol. 8 of 9; *State v. Davis*, 2016 WL 7451365, at *8-10 (footnote in original).    The opinion on Westlaw, which was not designated for publication, omitted the very last part of the court's ruling on this claim.    The language included here was obtained from the opinion in the state court record.    State Rec., Vol. 8 of 9.

application of state law.    *Estelle*, 502 U.S. at 68; *see also Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law") (citation and quotation omitted); *Swarthout v. Cooke*, 562 U.S. 216, 218 (2011) (federal habeas review does not lie for errors of state law).

Furthermore, to the extent she raises a federal constitutional issue, the record is clear that Davis was not denied a fair trial.    At the end of trial, the trial court held a jury-charge conference with all counsel present.    The trial court denied the defense's requested special "justifiable homicide" instruction because it was encompassed within and properly addressed by the court's standard charge on justifiable homicide.[35]    Defense counsel did not object to the ruling during the charge conference or to the jury instructions given at trial.[36]    The standard jury instructions included the relevant law on retreat, specifically, and justifiable homicide.[37]    Under the circumstances, she cannot show that omission of the special justifiable homicide charge rendered the trial fundamentally unfair.    *See Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law").    Davis is not

---

[35]    State Rec., Vol. 7 of 9, Trial Transcript, p. 641.    *See* Proposed Special Jury Charges at State Rec., Vol. 3 of 9.

[36]    *Id*. at 642, 649.

[37]    State Rec., Vol. 9 of 9, Transcript of Jury Instructions.

entitled to federal habeas relief on this claim.

## **<u>RECOMMENDATION</u>**

**IT IS RECOMMENDED** that Davis's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[38]

New Orleans, Louisiana, this ___7th___ day of _____November_____, 2018.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[38] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.